**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **IN RE:** | ) | **In Proceedings Under Chapter 11** |
| | ) | |
| **ALVION PROPERTIES, INC.,** | ) | **Case No. 15-40462** |
| | ) | |
| **Debtor.** | ) | |

**O P I N I O N**

This case is before the Court on an amended motion filed by Farmers State Bank of Alto Pass (the Bank) seeking a determination that the Debtor, Alvion Properties, Inc. (the "Debtor"), is a single asset real estate (SARE) under section 101(51B) of the Bankruptcy Code. 11 U.S.C. § 101(51B). The following creditors filed a Notice joining in the Bank's motion: Berkeley Law and Technology Group, LLP; DurretteCrump, PLC; Richard L. Coffman, PC d/b/a The Coffman Law Firm; and The Creekmore Law Firm, PC. The Debtor filed an objection to the motion and an evidentiary hearing was held on August 25, 2015.

***Facts***

In October 2007, the Debtor executed a note in the amount of $1,000,000.00 in favor of the Bank. The note is secured by a mortgage on certain real estate in Scott County, Virginia (described more fully below). When the Debtor defaulted under the terms of the loan documents, the Bank filed a foreclosure action in Scott County on September 9, 2013, which, according to the Debtor's Statement of Financial Affairs, remains pending.

The Debtor filed the instant chapter 11 proceeding on May 14, 2015. On Schedule A, the Debtor lists the following real property: 1,294 acres of land "owned fee simple" (fee simple tract) and 4,513 acres of minerals (mineral tract), all of which is located in Scott County,

Virginia (jointly referred to as the "property").[1] The Debtor lists the value of the property as $999,999,999.99. No other property is listed on Schedule A. The Bank is listed as the only secured creditor on Schedule D with a claim of $1,600,000.00 secured by a mortgage on the property.[2] The Bank represents that as of the petition date, the Debtor owed the Bank $804,307.43 in principal, $435,348.84 in accrued interest and $310,570.85 in costs and charges, for a total of $1,550,227.12. *See* Amended Motion to Determine that Debtor's Property is a Single Asset Real Estate at p. 7.

In section 18 of the Statement of Financial Affairs, the Debtor describes the nature of its business as "mining or contract for coal and building stone." According to the testimony presented at the evidentiary hearing, however, no business was being conducted on the property at the time of filing, nor is there currently any active business operation on the property.

Brad Henshaw, a senior vice-president at the Bank who does commercial and residential lending, testified that the "Alvion project" was brought to him in 2007. He further testified that although the Debtor has made efforts since that time to develop money-making projects on the property, the Debtor has not succeeded in doing so. In fact, according to Mr. Henshaw's testimony, there have been no commercial or business activities on the property since 2007. When questioned about the Debtor's attempts to use the timber on the property, he testified that the property's previous owner, George Howard, tried to timber the property – apparently without authority. Counsel for the Bank sent Mr. Howard a letter asking him to cease and desist his

---

[1] The fee simple tract includes both the surface rights and the mineral rights, constituting a single estate, whereas the mineral tract includes just the mineral rights below the surface. *See Dunn v. Patton*, 307 Ill.App.3d 375, 718 N.E.2d 264 (Ill.App. 5 Dist. 1999). The terms "fee simple tract" and "mineral tract" have been selected by the Court to differentiate the type of ownership in the two parcels and do not necessarily reflect the legal consequences associated with the ownership of the real estate.

[2] According to counsel for the Debtor, there is a dispute regarding the extent of the Bank's security interest in the property. That issue, however, is not before the Court at this time.

activities on the property. Neither the Debtor nor the Bank received any proceeds from Mr. Howard's ventures.

Don Medley also testified. Mr. Medley was an officer of the Debtor at the time the property in question was purchased. He could not recall the exact date of purchase, but thought that the purchase occurred sometime between 2000 and 2001.[3] Mr. Medley stated that Alvion was "preparing and developing" the property from 2000 to 2007, that the property came under the control of the Debtor's chief financial officer (identified as Mr. Weber) from 2007 to 2012, that a lawsuit against Weber ensued, and that pursuant to court order, the property was returned to the Debtor in April 2013. Mr. Medley further testified that there have been no active business projects on the property since 2007 - even after recovering the property in 2013 - despite various and unsuccessful attempts to "monetize" the property. He stated that an entity identified as Case Coal has a permit to mine a portion of the property and did in fact perform surface mining in 2010. However, according to Mr. Medley, Case Coal has not mined since that time largely because of the market, economic conditions and EPA coal restrictions. When asked about Alvion's income, Mr. Medley testified that Alvion has *never* had any income. Paraphrasing Mr. Medley's testimony, there were discussions, no agreements, no money.

Jack Reynolds, the secretary/treasurer and a 50% owner of the Debtor, testified that he is discussing a potential conservation easement on part of the fee simple tract with an entity known as Webb Creek Management. According to Mr. Reynolds, the discussions are ongoing but there is no firm plan or commitment regarding the potential easement. Mr. Reyonlds also testified that there have been attempts to "monetize" the property. When asked for examples, he stated that he is discussing the possible sale of some of the mineral rights, but that he does not yet have a

[3] Mr. Medley also testified that he transferred his stock in Alvion to his wife, Shirley Medley, sometime between 2004 and 2006.

letter of intent or concrete plans for such sale. Mr. Reynolds testified that some of the building stone from the fee simple tract was sold, but he did not provide any details, such as the dates or time period when the sales occurred and whether the Debtor received any income from the sales.

### *Issue*

Is the Debtor a SARE within the meaning of 11 U.S.C. § 101(51B), thereby subjecting it to the more stringent deadlines set forth in section 362(b)(3) of the Bankruptcy Code, 11 U.S.C. § 362(d)(3)?

### *Analysis*

The Bank seeks a determination that the Debtor is a SARE and therefore, subject to the provisions of § 362(d)(3). Section § 362(d)(3) provides:

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay–
>
> . . .
>
> (3) with respect to a stay of an act against single asset real estate under subsection (a), by a creditor whose claim is secured by an interest in such real estate, unless, not later than the date that is 90 days after the entry of the order for relief (or such later date as the court may determine for cause by order entered within that 90-day period) or 30 days after the court determines that the debtor is subject to this paragraph, whichever is later–
>
> (A) the debtor has filed a plan of reorganization that has a reasonable possibility of being confirmed within a reasonable time; or
>
> (B) the debtor has commenced monthly payments that–
>
> . . .
>
> (i) may, in the debtor's sole discretion, notwithstanding section 363(c)(2), be made from rents or other income generated before, on, or after the date of the commencement of the case by or from the property to each creditor whose claim is secured by such real estate (other than a claim secured by a judgment lien or by an unmatured statutory lien); and
>
> (ii) are in an amount equal to interest at the then applicable nondefault contract rate of interest on the value of the creditor's interest in the real estate.

The purpose of section 362(d)(3) is "to address perceived abuses in single asset real estate cases, in which debtors have attempted to delay mortgage foreclosures even when there is little chance that they can reorganize successfully." 3 *COLLIER ON BANKRUPTCY* ¶ 362.07[5][b] at 362-122 (Alan N. Resnick & Henry J. Sommer eds., 16 ed.). Section 362(d)(3) shortens such cases by requiring the court to grant relief from the stay if a reasonable plan is not filed within the time specified or payments are not commenced. *Id*. *See also In re River East Plaza, LLC*, 669 F.3d 826, 831 (7th Cir. 2012); *In re Geneva ANHX IV LLC*, 496 B.R. 888, 899 (Bankr.C.D.Ill. 2013).

Section 101(51B) of the Bankruptcy Code defines a SARE as follows:

> The term "single asset real estate" means real property constituting a single property or project, other than residential real property with fewer than 4 residential units, which generates substantially all of the gross income of a debtor who is not a family farmer and on which no substantial business is being conducted by a debtor other than the business of operating the real property and activities incidental thereto.

Pursuant to the statutory definition, three criteria must be satisfied for the debtor to be deemed a SARE:

> (1) the debtor must have real property constituting a single property or project (other than residential real property with fewer than 4 residential units), (2) which generates substantially all of the gross income of the debtor, and (3) on which no substantial business is conducted other than the business of operating the real property and activities incidental thereto.

*In re Scotia Pacific Co., LLC*, 508 F.3d 214, 220 (5th Cir. 2007). If any of the three requirements are not met, the debtor is not a SARE. *Id*.; *In re Yishlam, Inc.*, 495 B.R. 328, 330 (Bankr.S.D.Tex. 2013).

The moving party bears the burden of proving - by a preponderance of the evidence - that a debtor is subject to the SARE provisions of the Bankruptcy Code. *In re Yishlam, Inc.*, 495

B.R. at 330; *In re TTM MB Park, LLC*, 2012 WL 844499, at *1 (Bankr.S.D.Ala. 2012); *In re Hassen Imports Partnership*, 466 B.R. 492, 507 (Bankr.C.D.Cal. 2012). When determining whether a particular debtor is a SARE, "the Court must look to current facts, not to those existing in the past, nor to Debtor's aborted plans for the future." *Hassen Imports*, 466 B.R. at 507 (citing *In re Charterhouse Boise Downtown Props., LLC*, 2008 WL 4735264, at * 2 (Bankr.D.Idaho 2008)).

The Bank contends that in the instant case, all three elements of the statutory definition are satisfied. First, the property constitutes a single project because it consists solely of raw, undeveloped land that generates no income. Second, the project generates all of the Debtor's income (to the extent that any income is generated). Third, there is no substantial business being conducted on the property other than the business of operating the real property.

In response, the Debtor argues that the first prong of the test is not satisfied and therefore, it is unnecessary to decide whether the second and third prongs of the test are met.[4] With respect to the first prong, the Debtor contends that there is neither a "single property" nor a "single project" involved in this case. The Debtor states that it owns *two* separate pieces of property: (1) the fee simple tract of 1,294 acres, as well as the mineral rights to that tract; and (2) the mineral rights tract of 3,219 acres (these mineral rights are in addition to the mineral rights on the land that is owned fee simple). Thus, Debtor argues, a "single property" is not involved.

The first prong of the test requires a "single property or project." As there are two properties involved in the case before this Court, the fee simple tract and the mineral rights tract, it cannot be concluded that there is a "single property." The issue remains as to whether there is a "single project."

---

[4] With respect to the second prong – that the property generates substantially all of debtor's income – the Debtor responds only that it is not generating income from the properties. *See* Debtor's Objection to Motion to Determine that Debtor's Property is a Single Asset Real Estate at p. 3. The Debtor appears to concede the third element, stating that "[p]resently, no substantial business is operated on the property other than the operating of the real property." *Id.*

As the Debtor recognizes, the definition of a SARE set forth in § 101(51B) encompasses not only single "properties," but also single "projects." *See, e.g., In re Yishlam, Inc.*, 495 B.R. at 331; *Hassen Imports*, at 507; *In re Webb MTN, LLC*, 2008 WL 656271, at *4 (Bankr.E.D.Tenn. 2008). Determining whether multiple properties constitute a "single project" requires an examination of the facts. "[T]he properties must be linked together in some fashion in a common plan or scheme involving their use. The mere fact of common ownership, or even a common border, will not suffice." *Hassen Imports*, at 507 (citing *In re McGreals*, 201 B.R. 736, 742-43 (Bankr.E.D.Penn. 1996)). Stated another way, "the multiple parcels of real estate must be purchased, developed, or sold pursuant to a 'common plan or scheme,' linked together by 'common usage' or in pursuit of a 'common purpose.'" *In re Yishlam, Inc.*, 495 B.R. at 331 (citations omitted).

In the instant case, the Debtor argues that the two properties it owns are not linked together in a common plan or scheme and therefore do not constitute a "single project." The Debtor offers the following in support of its position: (1) the Debtor is moving forward on granting a conservation easement on a portion of the property; (2) the property has abundant timber, some of which has previously been sold; and (3) the property contains valuable building stone which can be sold at a considerable profit.

There is substantial case law holding that a SARE includes raw, undeveloped land generating no income. For example, in *In re Webb MTN, LLC*, the debtor purchased five separate parcels of real property with plans to construct a resort, a retail commercial center, a development of single-family homes, and condominiums. When the debtor filed a chapter 11 petition, the secured creditor who financed the purchase sought a determination that the debtor was a SARE and therefore subject to the provisions of § 362(d)(3). The debtor argued that based on the multiple uses and goals planned for the property, there was no "single project" and

therefore, it did not fall within the definition of a SARE. *In re Webb MTN, LLC*, 2008 WL 656271, at *4. The creditor asserted that although the debtor intended to develop the property into a variety of income-producing ventures, the property was largely undeveloped land producing no income and therefore, a "single project." *Id*. The court agreed with the creditor, finding that "even though the Debtor has plans to develop a number of different businesses on the Webb Mountain Property, the plans are still part and parcel of one large land development." *Id*. at *5 (citations omitted). The court added:

> Moreover, no development has actually commenced upon the Webb Mountain Property, therefore it is not producing any income and is passive in nature; i.e., the Debtor is "not . . . conducting any active business, other than merely operating the real property and activities incidental thereto . . . [such as] the mere receipt of rent and truly incidental activities such as arranging for maintenance or perhaps some marketing activity, or . . . mowing the grass and waiting for the market to turn." *Id*. at *6 (citations omitted).

Similarly, in *In re Sargent Ranch, LLC*, 2010 WL 3189714 (Bankr.S.D.Cal. 2010), the debtor had owned certain real property for several years. The primary plan for the property was a large residential development, but the debtor also had plans to include sand excavation, wildlife habitat mitigation, liquid asphalt extraction, and solar energy production. At the time the debtor filed its bankruptcy petition, the property remained undeveloped. The debtor argued that a "single property" was not involved since there were numerous parcels located in different counties. *Id*. at *2. The court agreed with the debtor, stating however that "separate properties can still constitute single asset real property if they are part of the same project" and that "*single asset real estate include[s] raw, undeveloped land*." *Id*. (emphasis added) (citations omitted). The court explained:

> Debtor attempts to avoid the single asset real estate label by trotting the numerous plans it has for developing the Property. However, *intentions do not constitute projects*. There is no disputing the fact that at the time the case was filed, as well as at

> the time of the hearing, every inch of every parcel of the Property, with the exception of a small portion being leased to third parties, is part of the same operation-namely, waiting and planning for future development.

*Id*. at *3 (emphasis added). The court concluded that because the debtor owned undeveloped real property on which no substantial business was being conducted, the debtor had a "single project." *Id*.

Other cases also have held that a single asset real estate includes raw, undeveloped land. *See, e.g., In re Mountain Edge LLC*, 2012 WL 4839784, at *3 (Bankr.D.N.M. 2012) (generally accepted that raw land or real property acquired and/or held for development falls within the definition of SARE); *In re Oceanside Mission Associates*, 192 B.R. 232, 236 (Bankr.S.D.Cal. 1996) (after analysis of the legislative history of 101(51B), the court concluded that single asset real estate includes undeveloped property which generates no income); *In re Kkemko, Inc.*, 181 B.R. 47, 51 (Bankr.S.D.Ohio 1995) (single asset real estate means a building or buildings which were intended to be income producing, or raw land).

The Debtor does not address *In re Webb MTN*, *In re Sargent Ranch* or any of the above-cited cases. Instead, the Debtor cites the following passage from the Fifth Circuit's decision in *In re Scotia Pacific Co., LLC*, 508 F.3d 214, 225 (5th Cir. 2007), to support its position that it is not a SARE:

> Section 101(51B) severely limits the class of debtors which qualify as SAREs, and we have no warrant to expand that definition. SARE debtors are carved out and subjected to stringent requirements in § 362(d)(3) which expedite the time for SARE debtors to file a plan of reorganization or commence making monthly payments, failing which the automatic stay is promptly lifted. *See* 11 U.S.C. § 362(d)(3). If [debtor] is considered a SARE debtor, this narrow exception to the ordinary bankruptcy process would sweep broadly and require us to include such entities as owners of land or mineral interests who operate

> sophisticated businesses such as mining, oil and gas drilling, and large commercial farms simply by virtue of the debtor owning the land. Such a result is obviously contrary to the plain language of 101(51B).

The Debtor fails to address how the court's statements in *Scotia Pacific* apply to the facts of this case. The Debtor argues that the Bank has failed to meet its burden of proving that the Debtor is a SARE. More specifically, the Debtor contends that the Bank failed to prove the existence of a "single project." According to the Debtor, the testimony showed that the Debtor intends to use the property for multiple purposes and therefore, a "single project" does not exist.

Turning to the case before this Court, the Bank, as movant, has the burden of proof on the issue of whether a "single project" exists, which is a factual determination. *Hassen Imports* at 507. This Court does not disagree with the assertion that "intentions do not constitute projects." But it must be recognized that such an assertion is applicable to both a debtor and a creditor. It prevents a debtor from claiming multiple projects and prevents a creditor from claiming a single project based merely on intent. If mere intent does not constitute multiple projects as claimed by a debtor, mere intent does not constitute a "single "project" as claimed by a creditor. The movant has the burden of proving a "single project" and if mere intent is insufficient to prove multiple projects, it is insufficient to prove a "single project."

Nor does this Court disagree with those courts that, based on the facts of their cases, conclude raw land or raw land with no income is a "single project." But it does not follow that in every instance raw land awaiting potential development is a "single project." On a continuum starting with mere ownership or control of raw land and ending with conversion to a functional use of the land, there is a point at which a project starts to exist. As the court in *Hassen Imports* points out, there is a difference between ownership and a project. *Hassen Imports* at 507.

The term “project” is defined in Webster’s dictionary as “a separate plan or design,” or “to devise in the mind,” or “plan, figure, or estimate for the future.” To determine if there is a “single project” in this case, three factors need to be considered:

1. Does the Debtor have an interest in property which allows it to act?

2. Does the Debtor have a plan for the property. Something more than a hope, a desire, or a general intent. What is going to be done with it, where will it be done, who will do it, and how will it be done?

3. Has the Debtor taken action designed to implement the plan or to achieve its goals?

As to the first factor, the Debtor has interests in the property which it controls and can develop. As to the second factor, the evidence was that the Debtor owns both the surface rights and the mineral rights in one tract and only the mineral rights to the second tract. The evidence also was that while there have been discussions about a possible conservation easement or a possible sale of mineral rights, no firm plan has been developed or commitment received. Therefore three possibilities exist (1) there is a single project; (2) there are multiple projects; or (3) there is no real project(s) and the property remains idle. If the mineral rights are to be developed there could be a “single project” as the Debtor controls the mineral rights to both tracts. However if timber removal or stone removal are to be developed, the project would be limited to the fee simple tract and the mineral rights tract would have to be developed separately and differently. It is also possible the property will remain idle. Furthermore, the project(s) could be developed by the Debtor and/or a third party or parties. Multiple developers would indicate multiple projects. As to the third factor, not only is there no business activity currently being conducted on the property, the last business activity occurred in 2007. Nor has any action been taken to implement a specific use of the property.

Without a plan or action taken to implement a plan, it cannot be concluded that the use of the property has progressed to the point that a project, or projects, have come into existence. As the Bank has the burden of proof as to the existence of a "single project" and the burden has not been met, its motion should be denied.

The foregoing analysis is not to say that a debtor's intent has no bearing. Mere expressions of intent, without evidence that the debtor has at least begun the efforts necessary for the development of a plan, which is appropriately supported, do not suffice. While the Debtor may have every intention of developing multiple projects on the property, the evidence proves that those intentions are at best speculative and have not come to fruition. Nonetheless, based on that same reasoning and contrary to the Bank's assertions, those factors establish that there is *no* project.

Section 362(d)(3) was added to the Bankruptcy Code to target abusive filings by Chapter 11 debtors with little or no cash flow and no means to fund a reorganization or to make adequate protection payments. *See In re Scotia Pacific Co., LLC*, 508 F.3d 214, 223 (5th Cir. 2007)(quoting *Little Creek Dev. Co. v. Commonwealth Mortgage Corp. (In re Little Creek Dev. Co.)*, 779 F.2d 1068, 1078 (4th Cir. 1986). The typical pre-SARE case has been described as "an apartment or office building, hotel, or "strip" shopping center owned by an entity whose sole business activity consisted of operating the property with the income it generated. *In re McGreals*, 201 B.R. 736 n. 7 (Bankr.E.D.Pa. 1986). Addressing the meaning of the term "single project," the *McGreals* court interpreted it to require "an element of commonality in the use of multiple properties . . . consistent with the commonly accepted meanings of the component words 'single' and 'project.'" There is a complete absence of commonality here.

Just as the court in *Scotia Pacific* decided, this Court is not willing to expand its purpose to include two separate and disparate properties which might not be developed as a single project.

Accordingly, the Bank's Amended Motion to Determine that Debtor's Property is a Single Asset Real Estate should be DENIED. A separate order will be entered consistent with this Opinion.

DATED: September 17, 2015

                                              William V. Altenberger
                                              U.S. Bankruptcy Judge