**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **ALVION PROPERTIES, INC.** | ) | **CASE NO. 15-40462-LKG** |
| **Debtor.** | ) | |
| | ) | |

**FARMERS STATE BANK OF ALTO PASS' OBJECTION TO DEBTOR'S AMENDED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN**

## INTRODUCTION

Farmers State Bank of Alto Pass (the "Bank") hereby objects to the Amended Disclosure Statement, [ECF #58] (the "Disclosure Statement") and Plan of Reorganization, [ECF #50] (the "Plan") filed by Debtor. The Disclosure Statement fails to provide "adequate information" as required by section 1125 of the Bankruptcy Code with respect to the implementation and feasibility of the Plan.

The Debtor fails to provide any meaningful information regarding the proposed purchase of its sole asset, certain surface land and mineral interests located in Scott County, Virginia (the "Property") by Webb Creek Management Group, LLC ("Webb Creek"). Given the Debtor's long history of unrealistic expectations regarding the Property, which have often led to Debtor falling victim to perpetrators of fraud, more meaningful information regarding Webb Creek is required for the Debtor's creditors to appropriately consider the Plan. Furthermore, the Disclosure Statement lacks information providing a rational basis for the valuation of the Property given the Debtor's contradictory and often unrealistic statements. Therefore, the

Disclosure Statement fails to provide adequate information for evaluation of the Plan, and should not be approved.

## LEGAL DISCUSSION

### I. ADEQUATE INFORMATION STANDARD

Under Section 1125(b) of the Bankruptcy Code, a debtor may not solicit the votes of creditors under a plan of reorganization unless the Court has approved a written disclosure statement. A disclosure statement cannot be approved unless it contains "adequate information."

> 'Adequate information' means information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, that would enable a hypothetical reasonable investor typical of holders of claims or interests of the relevant class to make an informed judgment about the plan,…

11 U.S.C. § 1125(a)(1).

The primary function of a disclosure statement is to provide creditors with information necessary to determine whether to accept or reject a debtor's plan of reorganization. *In re Monnier Bros.*, 755 F.2d 1336, 1342 (8th Cir. 1985); *In re Dakota Rail, Inc.*, 104 B.R. 138, 142 (Bankr. D. Minn. 1989).

The Bankruptcy Court has "wide discretion to determine on a case by case basis whether a disclosure statement contains adequate information …." *Dakota Rail*, 104 B.R. at 143. Courts have developed an oft-cited "nonexclusive and nonexhaustive list of types of information that should be included in a disclosure statement:"

1. The circumstances that gave rise to the filing of the bankruptcy petition;
2. A complete description of the available assets and their value;

3. The anticipated future of the debtor;

4. The source of the information provided in the disclosure statement;

5. A disclaimer, which typically indicates that no statements of information concerning the debtor or its assets or securities are authorized, other than those set forth in the disclosure statement;

6. The condition and performance of the debtor while in chapter 11;

7. Information regarding claims against the estate;

8. A liquidation analysis setting forth the estimated return that creditors would receive under chapter 7;

9. The accounting and valuation used to produce the financial information in the disclosure statement;

10. Information regarding the future management of the debtor, including the amount of compensation to be paid to any insiders, directors and/or officers of the debtor;

11. A summary of the plan of reorganization;

12. An estimate of all administrative expenses, including attorneys' fees and accountants' fees;

13. The collectability of any accounts receivable;

14. Any financial information, valuations or *pro forma* projection that would be relevant to creditors' determinations of whether to accept or reject the plan;

15. Information relevant to the risks being taken by the creditors and interest holders;

16. The actual or projected value that can be obtained from avoidable transfers;

17. The existence, likelihood and possible success of nonbankruptcy litigation;

18. The tax consequences of the plan; and,

19. The relationship of the debtor with affiliates. *E.g.*, *In re Scioto Valley Mortgage Co.*, 88 B.R. 168, 170-71 (Bankr. S.D. Ohio 1988), and cases cited therein.

*Dakota Rail*, 104 B.R. at 142-43.

When ruling on the sufficiency of a disclosure statement, a Court "must distinguish between 1) whether the disclosure statement contains adequate information to allow the typical creditor to make an informed decision on how to vote, and 2) whether the Plan can be confirmed." *Id.* at 143. "[W]here the disclosure statement on its face relates to a plan that cannot be confirmed … the court [has] an obligation not to subject the estate to the expense of soliciting votes and seeking confirmation of the plan; otherwise, confirmation issues are left for later consideration." *Id.* (citing *In re Pecht*, 57 B.R. 137, 139 (Bankr. E.D. Va. 1986)). "Allowing a facially nonconfirmable plan to accompany a disclosure statement is both inadequate disclosure and a misrepresentation." *Id.*

## II. DEBTOR'S DISCLOSURE STATEMENT DOES NOT PROVIDE ADEQUATE INFORMATION

The Disclosure Statement fails to meet the applicable standard for "adequate information" because it fails to give sufficient and complete information regarding the possible sale of the Property to Webb Creek.

### A. The Disclosure Statement does not provide adequate information regarding the proposed purchaser, Webb Creek.

Debtor's Disclosure Statement reflects, in part, the Debtor's long and checkered history relating to its stewardship of its primary asset. First, Debtor admits that it was defrauded by Bern D. Weber, who fraudulently induced Debtor to transfer all of Debtor's assets to an entity controlled by Weber. Only after extensive litigation was Debtor able to recover its assets from Mr. Weber. [Disclosure Statement, Section C].

Second, the Debtor ridiculously claims that a deal worth $100,000,000.00 was scuttled due to the Bank's mortgage lien encumbering minerals underlying the Property, which lien

secured a little more than $1,000,000.00. Certainly, had the proposed deal with the Melland Group proven to be legitimate, the Bank's mortgage could have been easily removed through payment of the Debtor's past due debt of the Bank. [Disclosure Statement, Section D].

Third, although not disclosed by Debtor in the Disclosure Statement, the Debtor testified at the evidentiary hearing relating to the Bank's Motion to Determine that Debtor's Property is a Single Asset Real Estate (the "SARE Hearing"), that it had attempted to monetize the value of the Property in a transaction involving Charles H. Sheehan, III, and his Southern Foundation for Advancement of Art and Education, Inc. In the SARE Hearing, it was disclosed that Mr. Sheehan was convicted of fraud in the United States District Court for the Southern District of Ohio.

Fourth, in Section E of the Disclosure Statement, the Debtor, once again, admits to having fallen victim to a fraud. This time, the perpetrator of the fraud was Creare LTD. Debtor's Schedules indicate that Debtor believed it was, once again, "monetizing" the Property for amounts in excess of a billion (with a "b") dollars. Fortunately for the Debtor, the Debtor lacked the $100,000.00 advance fee sought by the perpetrator of the fraud in this particular case. As a result, all the Debtor lost was time, energy and likely some amount of pride.

With respect to Webb Creek, the proposed buyer, the only information the Disclosure Statement provides is a non-binding memorandum drafted on Webb Creek letterhead. Based upon the long and disastrous history of the Debtor relating to the Property, more information relating to the viability and reliability of Webb Creek and the transaction proposed in the memorandum is required. Furthermore, based upon the memorandum provided by Webb Creek and attached to the Disclosure Statement, it is unclear what the actual purpose of the proposed transaction is. Disclosure of the purpose of the transaction is relevant to a proper evaluation.

**B. Debtor's Disclosure Statement Does Not Provide Adequate Information Regarding the Value of Its Property and the Applicable Sale Price.**

The valuation of the Property is highly relevant to any possible sale to Webb Creek. The Debtor has a long history of having unrealistic expectations regarding the value of the Property. The Disclosure Statement claims that the Debtor has a legitimate appraisal valuing its assets at $625,000,000.00, but then goes on to say that due to the "depressed coal market and the costs of extracting coal consistent with the environmental costs and regulations has significantly affected the present market price of the sale of this asset." [Disclosure Statement, Section B]. Accordingly, Debtor on one hand claims an outlandish valuation for its primary asset but then goes on to indicate that such valuation has been significantly affected by market conditions. The value of the Debtor's asset is obviously critical to determining whether any sale to Webb Creek is viable.

Based upon the foregoing, the Bank is highly skeptical of any proposed transfer or sale of the Debtor's Property without extensive information regarding the proposed purchaser, Webb Creek and the nature and purpose of the proposed transaction. For example, evidence of the financial viability of Webb Creek should be provided together with a definitive agreement detailing the proposed transaction. As indicated above, the Code requires "information of a kind and in sufficient detail as far as reasonably practicable in light of the nature and history of the Debtor, and the conditions of the Debtor's books and records, that would enable a hypothetical reasonable investor typical of holders of claims or interests of the relevant class to make an informed judgment about the Plan . . ." Based upon the nature and history of this Debtor, no reasonable investor would consider the Debtor's Plan a viable investment, which is what the Code requires.

## CONCLUSION

For the foregoing reasons, Debtors' Disclosure Statement is deficient and should not be approved.

Dated: October 29, 2015

ZIEMER, STAYMAN, WEITZEL & SHOULDERS, LLP

By:/s/ Nick J. Cirignano

Nick J. Cirignano #22927-53
P.O. Box 916
Evansville, Indiana 47706-0916
(812) 424-7575

**Counsel for Farmers State Bank**

## CERTIFICATE OF SERVICE

This is to certify that I served a copy of this pleading or paper electronically, via the Court's Electronic Filing System on or before the filing date thereof.

Dated: October 29, 2015.

/s/ Nick J. Cirignano

Nick J. Cirignano

H:\Bankrupt\Farmers State Bank\Objection to the Disclosure Statement v2.docx