# **<u>EXHIBIT B</u>**

EXECUTION VERSION

PSZJ Edits

**MEMBERSHIP UNIT PURCHASE AGREEMENT**

THIS MEMBERSHIP UNIT PURCHASE AGREEMENT (the "Agreement") is entered into effective as of the __ day of November, 2015, by and among ALVION PROPERTIES, INC. ("Alvion"), an Illinois corporation, ALVION PROPERTIES II, LLC, a Georgia limited liability company (the "Company"), WEBB CREEK INVESTMENTS, LLC ("WCI"), a Georgia limited liability company, and ALVION INVESTMENTS, LLC ("Buyer"), a Georgia limited liability company.  Alvion is sometimes referred to herein as the "Seller".  Seller, the Company, the Buyer, and WCI are sometimes referred to herein each as a "Party" and together as the "Parties" to this Agreement.  WCI enters into this Agreement in its capacity as a member of the Company and for the purpose of consenting to the transaction set forth herein.

W I T N E S S E T H

WHEREAS, the Company's issued and outstanding membership units are owned as follows: (1) 99 units, being 99% of the issued and outstanding units of the Company, by Alvion, and (2) 1 unit, being 1% of the issued and outstanding units of the Company, by WCI; and

WHEREAS, Seller desires to sell to the Buyer 98 of the issued and outstanding units of the Company (the "Subject Units"), and the Buyer desires to purchase and acquire the Subject Units, all upon the terms and subject to the conditions set forth herein; and

WHEREAS, this Agreement is contingent on the completion of the private placement of membership units of Buyer (the "Offering") made in accordance with a confidential Private Placement Memorandum (the "PPM") dated November ___, 2015; and

WHEREAS, Seller has proposed the terms of this transfer to the Company, and the Company, by and through its members, have approved the proposed transfer in accordance with the terms of its operating agreement and in the manner set forth in this Agreement; and

NOW, THEREFORE, in consideration of the above premises and the mutual covenants and agreements contained herein and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties hereto agree as follows:

**ARTICLE 1.**

**PURCHASE AND SALE**

1.1   Purchase and Sale of the Subject Units.  The Seller agrees to sell all of its right, title and interest in and to the Subject Units, and the Buyer agrees to purchase the Subject Units from the Seller, pursuant to the terms and conditions of this Agreement.

1.2   Purchase Price.

1.2.1   Amount of Purchase Price. The purchase price for the units shall be Six Million Twenty One Thousand Seven Hundred Twenty and 00/100 Dollars

1

EXECUTION VERSION

PSZJ Edits

($6,021,720.00) (the "Purchase Price").

    1.2.2   Payment of Purchase Price. At the Closing of this Agreement, the Buyer shall pay to Seller the Purchase Price in cash.

    1.2.3

## ARTICLE 2.

## CLOSING

2.1   Closing. The closing ("Closing") of the purchase and sale of the Subject Units pursuant to the terms of this Agreement shall take place at the county courthouse of Scott County, Virginia, on such date and time as may be agreed upon by the Parties, but in no event other than the express written consent of the Parties hereto shall the date of the Closing exceed Monday, December 21, 2015.

2.2   Items to be Delivered at Closing. At the Closing, the Seller shall deliver to Buyer an Assignment of Membership Interest, which shall transfer and assign to, and vest in the Buyer all of Seller's right, title and interest in and to the Subject Units, and simultaneously with such delivery, all such steps will be taken as may be required to put the Buyer in actual possession of the Subject Units.

2.3   The Company's most significant asset is real estate located in Scott County, Virginia, which is currently unencumbered.  In the event the real estate was encumbered in some manner prior to the Closing, Seller shall provide cancellations or releases of the real property clearing any encumbrances on the real estate at or prior to Closing.

## ARTICLE 3.

## REPRESENTATIONS AND WARRANTIES

3.1   Representations and Warranties of Seller. The Seller hereby represents and warrants to Buyer and Buyer's assigns and designees as follows:

    3.1.1   Organization and Power.  The Seller is an Illinois business corporation, duly incorporated and in good standing with the state of Illinois, with full power and authority to conduct its business as it is now being conducted, and to own and use the properties and assets that it purports to own or use, including but not limited to the Subject Units.  The President of the Seller is Shirley Karnes Medley, who is vested with full authority by the Seller to sign any and all documents necessary to consummate the transactions contemplated in this Agreement and to bind the Seller thereto.

EXECUTION VERSION

PSZJ Edits

3.1.2 Authority; No Conflict.

(a) This Agreement constitutes the legal, valid, and binding obligation of the Seller, enforceable against it in accordance with its terms. Upon the execution and delivery by the Seller of the documents to be executed and delivered by it pursuant to this Agreement (collectively, the "Seller Closing Documents"), Seller Closing Documents will constitute the legal, valid, and binding obligations of the Seller enforceable against it in accordance with its terms. The Seller has the absolute and unrestricted right, power, authority, and capacity to execute and deliver this Agreement and Seller Closing Documents and to perform its obligations under this Agreement and the Seller Closing Documents.

(b) The Seller has the full right, power, legal capacity and authority to enter into, and to perform its obligations under this Agreement and all other agreements and instruments to be executed by it pursuant to this Agreement. The Seller's execution, delivery, and performance of this Agreement and all other agreements, instruments and certificates to be executed by it pursuant to this Agreement will not violate any obligation of the Seller to any third party.

3.1.3 Title to Subject Units. The Seller has good, valid and marketable title to its interest in and to the Subject Units, free and clear of all encumbrances of any nature whatsoever.

3.1.4 Compliance with Legal Requirements; Governmental Authorizations. To Seller's actual knowledge, the Seller's present and continued ownership of its interest in and to the Subject Units does not violate any material law, ordinance, order, regulation, or other agreement affecting the Subject Units, and the Seller has not received written notice of any violations of any federal, state, county or municipal law, ordinance, order, regulation or requirement affecting any portion of the Subject Units or any of the assets of the Company. To the Seller's actual knowledge, the Seller has complied in all material respects with all federal, state, and local statutes, laws, rules and regulations affecting its ownership of the Subject Units and the assets of the Company.

3.1.5 Legal Proceedings; Orders. To the best of the Seller's actual knowledge, other than the proceeding referenced in 3.1.5(a) below, there is no pending proceeding (i) that has been commenced by or against the Seller or that otherwise relates to or may affect the Subject Units or any of the assets owned by the Company; or (ii) that challenges, or that may have the effect of preventing, delaying, making illegal, or otherwise interfering with, any of the transactions contemplated by this Agreement. In addition, no such proceeding has been threatened, and no event has occurred or circumstance exists that may give rise to or serve as a basis for the commencement of any such proceeding. There is no rule, order, injunction, or similar requirement of any court, local, state, or federal, to which either Seller, all or any portion of the Subject Units, or any of the assets of the Company, is subject.

(a) Seller hereby acknowledges that it is Debtor-in-Possession in case number 15-40462-kjm in the United States Bankruptcy Court in the Southern District of Illinois ("Seller's Bankruptcy Case"). Seller, by and through counsel, has undertaken action to receive all necessary consents and approvals of the bankruptcy court, the United States Trustee appointed to its case, and its creditors to enter into and consummate this transaction. Said

consent and approval is or shall be evidenced by an Order Granting Motion to Sell, which is or shall be attached hereto as Exhibit "A" prior to the Closing of this Agreement.

        3.1.6    <u>Brokers or Finders</u>. The Seller has not incurred any obligation or liability, contingent or otherwise, for brokerage or finder's fees or agent's commissions or other similar payment in connection with this Agreement.

        3.1.7    <u>Completeness of Disclosure</u>. No representation or warranty by Seller in this Agreement, nor any certificate, schedule, statement, document or instrument furnished or to be furnished to Buyer pursuant hereto, or in connection with the negotiation, execution or performance of this Agreement, contains or will contain any untrue statement of a material fact that omits or will omit to state a material fact required to be stated herein or therein or necessary to make any statement herein or therein not misleading.

        3.1.8    The representations and warranties of the Seller hereunder shall survive the Closing of the transactions contemplated by this Agreement.

    3.2    <u>Representations and Warranties of Buyer</u>. Buyer hereby represents and warrants to Seller as follows:

        3.2.1    <u>Corporate Existence.</u> Buyer is a duly organized Georgia limited liability company, active and in good standing, having full power and authority to conduct its business as it is now being conducted, and to perform all of its obligations under this Agreement. The below-signed manager of the Buyer has full power and authority to bind the Buyer per the governing documents of the Buyer, copies of which shall be furnished to the Seller upon request.

        3.2.2    <u>Authority; No Conflict</u>.

    (a)    This Agreement constitutes the legal, valid, and binding obligation of Buyer, enforceable against Buyer in accordance with its terms. Upon the execution and delivery by Buyer of the documents to be executed and delivered by Buyer pursuant to this Agreement (collectively, the "<u>Buyer Closing Documents</u>"), the Buyer Closing Documents will constitute the legal, valid, and binding obligations of Buyer enforceable against Buyer in accordance with their respective terms. Buyer has the absolute and unrestricted right, power, authority, and capacity to execute and deliver this Agreement and the Buyer Closing Documents and to perform their obligations under this Agreement and the Buyer Closing Documents.

    (b)    Neither the execution and delivery of this Agreement nor the consummation or performance of any of the transactions contemplated by this Agreement will, directly or indirectly (with or without notice or lapse of time) contravene, conflict with, or result in a violation of, or give any party the right to challenge any of the transactions contemplated by this Agreement or to exercise any remedy or obtain any relief under, any legal requirement or any order to which Buyer may be subject.

        3.2.3    <u>Brokers or Finders</u>. Buyer has incurred no obligation or liability, contingent or otherwise, for brokerage or finder's fees or agent's commissions or other similar payment in connection with this Agreement.

EXECUTION VERSION

PSZJ Edits

3.2.4   Financial Capability. At Closing, provided the Buyer successfully completes the Offering, the Buyer will have the financial ability to deliver the Purchase Price in accordance with the terms of this Agreement.

3.2.5   Completeness of Disclosure. No representation or warranty by Buyer in this Agreement nor any certificate, schedule, statement, document or instrument furnished or to be furnished to Seller pursuant hereto, or in connection with the negotiation, execution or performance of this Agreement, contains or will contain any untrue statement of a material fact or omits or will omit to state a material fact required to be stated herein or therein or necessary to make any statement herein or therein not misleading.

3.2.6   Taxes.

(a)   The Seller has filed or caused to be filed all returns (including any information return) report, statement, schedule, notice, form, or other document or information filed with or submitted to, or required to be filed with or submitted to any governmental or regulatory authority in connection with the determination, assessment, collection, or payment of any Taxes (as defined below) in  connection with the administration, implementation, or enforcement of or compliance with any legal requirement relating to any Taxes ("Tax Returns") that are or were required to be filed by or with respect to it pursuant to applicable federal, state, local, municipal, foreign, international, or other administrative order, law, ordinance, regulation, statue or treaty ("Legal Requirement").  All Tax Returns were correct and complete in all material respects.  The Seller has paid, or made provision for the payment of, all federal, state, local or foreign tax with respect to income, accumulated earnings, franchise, capital, employees' income withholding, back-up withholding, social security, unemployment, disability, withholding on payments to foreign persons, real property, personal property, sales, use, excise, transfer or any other taxes, duties, charges or levies of any nature imposed by any taxing or other governmental or regulatory authority, including penalties and interest ("Taxes") that have or may have become due pursuant to those Tax Returns or otherwise, or pursuant to any assessment received by the Seller.

(b)   The Company has filed or caused to be filed all Tax Returns that are or were required to be filed by or with respect to it pursuant to applicable Legal Requirements.  All Tax Returns were correct and complete in all material respects.  The Company has paid, or made provision for the payment of, all Taxes that have or may have become due pursuant to those Tax Returns or otherwise, or pursuant to any assessment received by the Company.

(c)   There is no material dispute or claim concerning any Taxes of the Company either (i) claimed or raised by any authority or (ii) as to which the Seller has knowledge.

(d)   All Taxes that the Company is or was required by Legal Requirements to withhold or collect have been duly withheld or collected and, to the extent required, have been paid to the proper authorities.

(e)   There is no tax sharing agreement that will require any payment by the Company after the date of this Agreement.

5

PSZJ Edits

(f)     Neither the Company nor the Seller are obligated to pay any Taxes of any third party, whether related or unrelated.

(g)     The Company qualifies, and has since the date of its formation qualified, to be treated as a partnership for federal and state income tax purposes and none of the Company, or Seller, or any taxing authority has taken a position inconsistent with such treatment.

(h)     There are no liens for Taxes upon any property of the Company.

~~3.2.5~~(i) The Seller is not a "foreign person" with the meaning of I.R.C. Section 1445 and shall furnish Buyer with an affidavit satisfying the requirement of I.R.C. Section 1445(b)(2) and the regulations promulgated thereunder by the United States Department of Treasury.

~~3.2.6~~3.2.7     The representations and warranties of Buyer hereunder shall survive the Closing of the transactions contemplated by this Agreement.

4.     Conditions Precedent to Buyers' Obligations. All obligations of the Buyer under this Agreement are subject to the satisfaction, prior to or at the Closing, of each of the following conditions precedent:

4.1     Representations and Warranties. The representations and warranties of the Seller contained in this Agreement shall have been true on the date hereof and shall be true on the Closing with the same effect as though such representations and warranties were made as of the Closing.

4.2     Compliance with this Agreement. The Seller shall have performed and complied with all agreements and conditions required by this Agreement to be performed or complied with by it prior to or at the Closing.

4.3     Closing Certificate. Buyer shall have received a certificate from the Seller dated as of the Closing, certifying in such detail as the Buyer may reasonably request that the conditions specified in in this Agreement hereof have been fulfilled and certifying that the Seller has obtained any and all consents and approvals required to consummate the transactions contemplated by this Agreement.

4.4     No Proceedings. No Proceedings, other than the Seller's Bankruptcy Case, shall be pending or threatened (a) involving a challenge to, or seeking damages in connection with, the transaction contemplated by this Agreement, (b) that may have the effect of preventing, delaying, making illegal, or otherwise interfering with the transaction contemplated by this Agreement, or that may have the effect of adversely affecting the right of the Buyer to acquire or own or enjoy the value and benefit of the Subject Units.

4.5     Successful Offering.  Buyer shall have no obligation to proceed under this Agreement unless the Offering is completed.  If the Offering is terminated for any reason, this Agreement shall become null and void.

PSZJ Edits

      4.6      <u>Order on Motion to Sell</u>.  Buyer shall have no obligation to proceed under this Agreement unless Seller procures an Order Granting a Motion to Sell or some substantially similar approval document in Seller's Bankruptcy Case that approves the Closing of the transactions contemplated in this Agreement.

5.      <u>Conditions Precedent to Seller's Obligations</u>. All obligations of Seller under this Agreement are subject to the satisfaction, prior to or at the Closing, of each of the following conditions precedent:

      5.1      <u>Representations and Warranties</u>. The representations and warranties of the Buyer contained in this Agreement shall have been true on the date hereof and shall be true on the Closing with the same effect as though such representations and warranties were made as of the Closing.

      5.2      <u>Compliance with this Agreement</u>. The Buyer shall have performed and complied with all agreements and conditions required by this Agreement to be performed or complied with by it prior to or at the Closing.

      5.3      <u>Closing Certificate</u>. Seller shall have received a certificate from the Buyer dated as of the Closing, certifying in such detail as Seller may reasonably request that the conditions specified in this Agreement have been fulfilled and certifying that the Buyer has obtained all consents and approvals required, including but not limited to a duly enacted resolution of the Buyer consenting to these transactions, to consummate the transactions contemplated by this Agreement.

      5.4      <u>No Proceedings</u>. No Proceedings, other than the Seller's Bankruptcy Case, shall be pending or threatened (a) involving a challenge to, or seeking damages in connection with, the transaction contemplated by this Agreement, (b) that may have the effect of preventing, delaying, making illegal, or otherwise interfering with the transaction contemplated by this Agreement, or that may have the effect of adversely affecting the right of Buyer to acquire or own or enjoy the value and benefit of the Subject Units.

      5.5      <u>Payment of Purchase Price</u>. The Buyer shall have delivered to Seller the Purchase Price in the manner provided herein by providing cash to the Closing Agent.

6.      <u>Miscellaneous</u>.

      6.1      Where the Company may be required to determine the distributive share of partnership items under 26 U.S.C. § 702(a) with respect to a partner whose interest in the partnership changes during any taxable year, the Company agrees to use the interim closing method as set forth in 26 C.F.R. § 1.706-1(c)(2)(ii).

      6.2      The representations, warranties, covenants, and agreements <u>(including, without limitation, all indemnity obligations)</u> of the Seller <u>and Buyer</u> set forth herein shall survive the conveyance of the Subject Units described herein and shall not be extinguished by the execution of that conveyance.

7

6.3     This Agreement shall inure to the benefit of and shall be binding upon the parties hereto and their heirs, legal representatives, successors and assigns.

6.4     This Agreement shall be construed and governed in accordance with the laws of the State of Georgia.

6.5     This Agreement embodies the entire understanding and agreement of the parties hereto relating to the exchange contemplated herein.  All prior understandings and agreements relating to the exchange contemplated herein are hereby expressly waived and terminated by the parties hereto.

6.6     In case one or more of the provisions contained in this Agreement shall be held to be invalid, illegal or unenforceable, for any reason and in any respect, the same shall not affect any other provision in this Agreement, and this Agreement shall be construed as if such invalid, illegal or unenforceable provision had never been contained herein.

6.7     The headings are inserted herein for convenience and are not to be considered in construing this Agreement.

6.8     This Agreement and the rights and interests of a party hereunder may not be assigned, transferred, pledged or conveyed without the prior written consent of the other parties hereto.

6.9     By entering into the transactions contemplated by this Agreement, the Buyer hereby assumes all duties and obligations of the Seller under the operating agreement of the Company, as is further evidenced by the execution of an Amendment to the Company's operating agreement contemporaneously herewith and hereby indemnifies and agrees to defend, protect and save and hold Seller harmless of, from and against any and all claims, losses, liabilities, obligations, causes of action and actions and proceedings of any kind or character (including, without limitation, all tribunal and court costs and reasonable attorneys' fees and costs) as Seller may suffer or incur by reason of Seller's being a member of the Company and otherwise cooperating in structuring the purchase and sale transaction between Buyer and Seller in the manner contemplated by this Agreement and the Company's operating agreement; provided that nothing herein shall be deemed to modify, limit or otherwise affect Seller's obligation to transfer the Subject Units to Buyer in accordance witgh the terms, conditions and provisions of this Agreement. *[Note: The Committee requests a copy of the amendment to the operating agreement referred to above.]*  This Agreement is intended by the parties to fulfill the writing requirement of paragraph 4.5.2 of the Company's operating agreement.

6.10    The ~~Seller and the~~ Buyer hereby agree to indemnify and hold the Company and all its Members harmless from and against all loss or liability attributable to any change in the tax status of the Company resulting from the transfer.

8

EXECUTION VERSION

PSZJ Edits

      6.11    The Buyer hereby agrees to protect, <u>defend,</u> indemnify, and hold the Seller harmless from any and all liability whatsoever for liability pursuant to any securities laws of the United States, including but not limited to any regulations promulgated thereunder, and securities laws of any state, including but not limited to any regulations promulgated thereunder.

      <u>6.12    The indemnity obligations set forth in this Agreement shall be cumulative (and not in lieu of any other indemnity obligations) and are intended to be interpreted and construed as such.</u>

      7.    <u>Attorney's Fees</u>.    Each party hereto shall be responsible for any and all attorneys' fees arising in connection with this Agreement which have been incurred on its behalf.

(SIGNATURES BEGIN ON FOLLOWING PAGE)

EXECUTION VERSION

PSZJ Edits

       IN WITNESS WHEREOF, the Buyer and the Seller have each executed and delivered this Membership Unit Purchase Agreement as of the date and year first shown above.

                              **SELLER:**

                              ALVION PROPERTIES, INC.

Signed, sealed and delivered
in the presence of:

_____   _____
Unofficial Witness                              BY: SHIRLEY KARNES MEDLEY, President

_____
Notary Public
My Commission Expires: _____

                              **BUYER:**

Signed, sealed and delivered      ALVION INVESTMENTS, LLC
in the presence of:

_____   _____
Unofficial Witness                              BY: BRYAN W. KELLEY, Manager of Webb Creek Management Group, LLC, Manager of Buyer

_____
Notary Public
My Commission Expires: _____

                              **CONSENTED:**

                              WEBB CREEK INVESTMENTS, LLC

Signed, sealed and delivered
in the presence of:

_____   _____
Unofficial Witness                              BY: BRYAN W. KELLEY, Manager

_____
Notary Public
My Commission Expires: _____

               (SIGNATURES CONTINUE ON FOLLOWING PAGE)

EXECUTION VERSION

PSZJ Edits

**CONSENTED:**

| | |
|---|---|
| Signed, sealed and delivered<br>in the presence of: | ALVION PROPERTIES II, LLC |
| _____<br>Unofficial Witness | _____<br>BY: BRYAN W. KELLEY, Manager of Webb Creek Management Group, LLC, Manager of Alvion Properties II, LLC |
| _____<br>Notary Public<br>My Commission Expires: _____ | |

11

**CERTIFICATE OF SERVICE**

The undersigned certifies that a copy of the **COMMITTEE'S STATEMENT SUPPORTING DEBTOR'S MOTION FOR ORDER AUTHORIZING SALE OF REAL PROPERTY FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS UNDER SECTION 363 OF THE BANKRUPTCY CODE** was served on all parties receiving notice on the Court's ECF system on December 11, 2015.

    /s/ Laura Uberti Hughes