IN THE UNITED STATES BANKRUPTCY COURT

FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| ALVION PROPERTIES, INC. | ) | Chapter 11 |
| Debtor. | ) | CASE NO. 15-40462 |

NOTICE OF DEBTORS' MOTION FOR ORDER AUTHORIZING SALE OF REAL PROPERTY FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS UNDER SECTION 363 OF THE BANKRUPTCY CODE

DOUGLAS A. ANTONIK

ANTONIK LAW OFFICES

3405 Broadway

PO Box 594

Mt. Vernon, Illinois 62864

Telephone: 618-244-5739

Facsimile: 618-244-9633

antoniklaw@charter.net



FILED DEC 14 2015 CLERK, U.S. BANKRUPTCY COURT SOUTHERN DISTRICT, ILLINOIS

To: All Parties-In-Interest:

   PLEASE TAKE NOTICE that Debtor, Alvion Properties, Inc., has filed a Motion for Order Authorizing Sale of Real Property Free and Clear of Liens, Claims. Encumbrances and interests Under SS-363 of the Bankruptcy Code wherein Alvion seeks to sell, subject to higher and better bids, The real property described on Exhibit A hereto (the "Property") to Purchaser for $6,021,720.00. The Sale Motion and its exhibits, including with Sale Documents by and between the Debtor and Purchaser, may be obtained by contacting the undersigned.

   All competing bids for the assets to be sold and/or any legal objections to the Sale Motion Must be filed with the Court (electronic filing required) and served on the undersigned on or Before December 11, 2015. **Any competing bids should describe with particularity why such bid is superior to the transaction described in the Sale Motion. Any legal objections to the Sale Motion must state with particularity the legal and factual basis for the objection. Any and all such competing**

**Bids and/or objections must be served on the undersigned counsel to the Debtor by 5 PM,**

**Central Time on December 11, 2015, and filed electronically with the United States Bankruptcy Court for the Southern District of Illinois, 301 West Main Street, Benton, Illinois 62812.**

This is a notice to the debtor of a legal objection to the sale motion and to any competing bids which is being filed out of the time sequence for the following reasons.

1) Donald Rishell is a disabled veteran from the Vietnam Era from 1968 with a purple heart.
2) For the last several months I have had extreme health problems regarding prolific bleeding from the bladder area.
3) Prior to the original filing of the bankruptcy by the debtor, on or about December 11, 2014, I visited Harrisburg, Illinois to negotiate financing for this project. I was successful in obtaining a bank commitment for financing from Grand Rivers Community Bank in the amount of $8,900,000, which was accepted by all three principles, Shirley M. Medley, Donald Medley, and H.R. Jack Reynolds. All agreed to pay out for the financing which is indicated in the use of funds schedule negotiated between the principles, the bank, and Mr. Donald Rishell. Examples of the amount of funds to be paid as negotiated by the principals, was $1,000,000 for Shirley M. Medley, $1,000,000 for Donald Medley, and H.R. Jack Reynolds. In addition to $1,000,000, for Donald Rishell, and $400,000 in expenses for Donald Rishell. A list of the use of funds is included.
4) At approximately December 15, 2014, Shirley M. Medley, Chairman/President of Alvion Properties notified Donald Rishell by email that the bank approved funding request up to $9,000,000 and additional $1,000.000 of loan proceeds was to be used to purchase The Emerald Rough, to be available for security of the bank loan.
5) All numbers were approved by all three principles.
6) Alvion Properties Inc. filed voluntary bankruptcy on May 15, 2015. Along with court documents indicating a method to proceed to satisfy all creditors. A hearing was held by Mark Staggs, US Trustees office, 401 Main St., Suite 1100, Peoria, Illinois, 61602. Prior to the initial predators meeting, Mr. Rishell presented his bank approval of $8,900,000 to be used to satisfy all creditors and provide additional monies to the principles. At the hearing there was also an additional proposal to finance the project with letters of credit from a non operational Dominican Republic Bank.
7) All testimonies at the additional creditors meeting were under oath. All three principles testified falsely regarding the financing proposals that have been presented to that time. Mr. Rishell had performed financial checks on the Dominican Bank, that was supplying the letters of credit, and had learned that they had gone out of business on January 1, 2015. Mr. Medley was asked if he had performed any financial checks on the financing to fund the letters of credit. He answered, no he did not think it was necessary.
8) This request is being presented out of the time factor for the reason that over the last two months, Mr. Rishell has had excessive bleeding due to the VA Disability. He went into the hospital on November 22, 2015, had two major operations, spent four days in ICU, was home for a week and returned for another week due to urinary infection and pneumonia, and returning home Dec. 10, 2015.
9) I notified the bankruptcy court in Benton, Illinois and asked what it would require to get on the pacer system to allow this information to be submitted on a timely manner. I was informed, that because I was not an attorney, that would be impossible, but if the information was provided by Federal Express overnight for delivery by Monday, December 14, 2015, it would be accepted. I also, depending on my health would be available for a participation in a

hearing to resolve the matter of our proposal that was originally accepted by the principals for financing and for insuring that my fees and expenses are protected.

Sincerely,

*Donald C. Rishell*

Donald C. Rishell

Dear Mr. Covert:

Candidly, I was shocked when we received your March 7, 2015, email regarding the sale and financing of Alvion Properties, Inc., for $23,000,000.00. Pursuant to negotiated agreements, Pegula Rishell, LLC, has secured a loan commitment of $8,900,000.00, for the purchase of the assets of Alvion Properties, Inc. At no time has any number greater than this commitment ever been discussed between Mr. Donald Medley, Mr. H.M. Reynolds, and myself.

After many conversations, on or about December 11-12, 2014, I visited Harrisburg, IL, representing Pegula Rishell, LLC, and presented the financing request for purchase of the real estate, all mineral rights, and leases ("Alvion Assets") of Alvion Properties, Inc.. I presented this request in the presence of Mr. Michael Williams, Mr. Medley, Mr. Reynolds, and Mr. Jack Hayer. At this presentation, both Mr. Medley and Mr. Reynolds indicated that they would each accept $1,000,000.00 for their interests in the Alvion Assets, and that the payments to Mr. Medley and Mr. Reynolds, and the payment of the Alvion debts, would be paid from the proceeds of the negotiated loan. Each of Mr. Medley and Mr. Reynolds presented numbers in their own handwriting, to all the above persons in attendance including myself, of what the debts of Alvion that would need to be satisfied to clear title for the sale, and that Mr. Medley and Mr. Reynolds would each receive a payment of $1,000,000.00. The total of the Alvion debts to be paid and the payments to Mr. Medley and Mr. Reynolds was $8,311,000.00. This was clearly a meeting of the minds, and Mr. Medley and Mr. Reynolds agreed to the deal.

On or about December 12, 2014, after further discussions with Mr. Medley and Mr. Reynolds, it was agreed that the financing request would be amended to $8,900,000.00. In reliance on the representations and agreements of Mr. Medley and Mr. Reynolds, the financing request was amended and hand delivered by Mr. Medley to Mr. Williams and his funding bank. The funding request was approved by both Mr. Williams and his funding bank. At a later date Mr. Williams called me and told me he had located a bank to provide the loan to Pegula Rishell, LLC. The delivery of the funding request to Mr. Williams by Mr. Medley is further indication that we had a meeting of the minds, and Mr. Medley had agreed to the deal.

On December 15, 2014, Ms. Shirley Medley, Chairman/President of Alvion Properties, Inc. notified me by email that the bank had approved the funding request for up to $9,000,000.00. Additionally, the December 15, 2014, email from Ms. Medley indicated that up to $1,000,000.00 of loan proceeds was to be used for the purchase of the Emerald Rough to be available as security for the bank loan, if requested. This is indication that we had a meeting of the minds and approval of the deal by Ms. Medley, the Chairman/President of Alvion Properties, Inc., the seller of the Alvion Assets.

Relying on this approval email from Ms. Medley, with full knowledge, direction and mandate of Mr. Medley and Mr. Reynolds, I proceeded to negotiate settlements with the Alvion creditors indicated by Mr. Medley and Mr. Reynolds. In negotiating the settlements with Alvion creditors, I relied on the sale numbers as agreed upon by Mr.

Medley and Mr. Reynolds, and as were used in the financing request with Mr. Williams, and upon which Mr. Williams relied is his approval of the financing. Never were the sale numbers any different than those used for and as presented to Mr. Williams on December 12 - 15, 2014, until I received your email of March 7, 2015.

Relying on (1) the numbers presented by Mr. Medley and Mr. Reynolds to sell the Alvion Assets to Pegula Rishell, LLC, for $1,000,000.00 each, together with the payment of all debts necessary to clear the title to the Alvion Assets, (2) the settlement numbers of Alvion creditors as negotiated by myself, and (3) collateral acceptable to the lender, on February 7, 2015, Mr. Michael Williams, for Grand Rivers Community Bank, issued an official commitment letter to Pegula Rishell, LLC, in the amount of $8,900,000.00, The commitment letter indicates that the purpose of the loan is to assist in clearing of the title to the Alvion Assets. A major portion of the debt against Alvion Properties, Inc., the Alsion Assets, and the owners of Alvion (personally), was incurred in an effort to clear the claims against the title to the Alvion Assets, and for a loan taken against the Alvion Assets. The purpose of the loan and the purchase of the Alvion Assets is to clear a bad loan, and satisfy debt against Alvion for value already received by Alvion and its owners, including debt perfected against the individual shareholders of Alvion Properties, Inc.

Never, from the date of our meeting of the minds on December 11-12, 2014 (as amended December 12, 2014), until your email of March 7, 2015, did the numbers change.

Pegula Rishell, LLC, et al, including principals, investors, and security providers, relied on the representations and agreements of Ms. Medley, Mr. Medley, and Mr. Reynolds to get all parties to this point, and have damages if this deal is not completed as agreed by the parties, and as used in the bank commitment. Based on the circumstances associated with this transaction, there has been a "meeting of the minds" regarding this transaction. Pegula Rishell, LLC, and its investors and security providers are very knowledgeable in these types of transactions, and want this transaction completed as agreed and as used for the bank commitment. Pegula Rishell, LLC, and its investors and security providers, stand to lose a large amount of money unless this deal is closed.

Pegula Rishell, LLC, and its investors and security providers are very upset and the change of minds of Mr. Medley and Mr. Reynolds. There is no more security available. Our security providers will not pledge any additional security for this loan.

The security requirements for this transaction have not yet been finalized, and we do not know what the group providing the guarantee will require for the use of their collateral. All assets must be available without condition until the security is returned, and the lender is repaid in full either before or at the end of the term. If the loan is not repaid within the term, and the lander keeps the CD security, the CD security provider will take the property. We do have a letter of Intent from Odossey Energy, LLC, for $15,000,000 for the Alvion Assets. Obviously, this letter of intent is used to induce the security provider to provide the security. If, within the term of the loan (one year), Mr.

Medley and/or Mr. Reynolds bring a purchaser to Pegula Rishell, LLC, at an amount over $15,000,000.00 sufficient to pay off the security providers, Pegula Rishell, LLC, could make available funds on the overage, on some basis to be agreed upon between the parties. If, within the term of the loan (one year), Pegula Rishell, LLC, brings a purchaser at an amount over $15,000,000.00 sufficient to pay off the security providers, Pegula Rishell, LLC, could make available funds on the overage, on some basis to be agreed upon between the parties. If neither party brings a buyer, and the deal from Odossey fails, and Pegula Rishell, LLC, defaults on the bank loan, and the bank forecloses on the security, the security provider for the bank loan ends up with the property.

Pegula Rishell, LLC, stands ready, willing, and able to perform under terms consistent with the meeting of the minds between the parties, and the bank commitment. Pegula Rishell, LLC's investors and security providers are already weighing their remedy options if the deal is not closed as agreed. I, personally, do not like the options they are considering. Pegula Rishell, LLC, wants to get this deal done now, not fight about it for years to come.

Please advise, and please do not hesitate to contact me with any questions you may have.


Sincerely

260 S. Main
P. O. Box 147
Grand Chain, IL 62941

Phone: 618-634-2208
Fax: 618-634-2652



**GRAND RIVERS**
Community Bank EST. 1902

406 E. Washington Street
P. O. Box 460
Karnak, IL 62956

Phone: 618-634-2002
Fax: 618-634-9813

February 7, 2015

Pegula Rishell, LLC, a Pennsylvania LLC
50 Pegula Lane
Scott Township, PA 18447

Gentlemen,

Grand Rivers Community Bank is pleased to commit a loan in the amount of $8,900,000 to Pegula Rishell, LLC, a Pennsylvania LLC. The loan will have a term of 364 days at a fixed rate of 4.00%. The loan will be secured by a Certificate of Deposit in the amount of $8,900,000 in which funds will be wire transferred to Grand Rivers Community Bank for this deposit. The Certificate of Deposit will carry a rate of 1.00% for a 13 month term. A one-time loan fee of $5,000 will be collected from borrower at the time of closing. The signatures of George N. Pegula, Member and Donald C. Rishell, Managing Member will be required on the Promissory Note and Assignment of Deposit. A payment of the accrued interest on a monthly basis will be paid by borrower. There will be no prepayment penalty on the loan for early payoff. There will the normal penalty tied to the Certificate of Deposit for early withdrawal of the deposit prior to the maturity.

It is the purpose of the mentioned loan to assist in the clearing of title on acreage located in Scott County, Virginia being purchased by Pegula Rishell, LLC. To ensure a clear title is obtained prior to the sale of this acreage, a reputable title insurance company in Scott County, Virginia will be used as the closing agent for the real estate purchase. The closing will take place in Scott County, Virginia.

Before funds are disbursed by Grand Rivers Community Bank, a fully executed Purchase Agreement must be signed by both buyers and sellers of the real estate and underlying minerals. This Purchase Agreement must be fully approved by Grand Rivers Community Bank and the sellers of the real estate and minerals prior to any funds being disbursed by the title company in Virginia.

*Michael Williams*

Michael Williams
Grand Rivers Community Bank

Grand Rivers Community Bank
To
Rishell Pegula, LLC

Loan Amount: $8,900,000.00

Use of Funds Schedule

| Entity | Amount |
|---|---|
| George Howard | $1,000,000.00 |
| H. M. Jack Reynolds | $1,000,000.00 |
| Shirley Medley | $1,000,000.00 |
| Jennifer T. Jolly | $1,000,000.00 |
| George Pegula | $1,000,000.00 |
| Donald C. Rishell | $1,000,000.00 |
| Farmers State Bank | $ 804,000.00 |
| Richard Coffman, Esq. XDL Group | $ 600,000.00 |
| Donald C. Rishell Expenses | $ 400,000.00 |
| Clancy Covert, Esq. | $ 250,000.00 |
| Douglas Lehman, Esq. | $ 150,000.00 |
| Keith Grant, Esq. | $ 40,000.00 |
| Jack Bailey | $ 20,000.00 |
| Jack Hayer | $ 20,000.00 |
| Mike Williams | $ 20,000.00 |
| Robertson, Smith & Wells, PC | $ 10,203.00 |
| J. Moody, Esq. | $ 10,000.00 |
| D. Petway, Esq. | $ 10,000.00 |
| D. Dun, Esq. | $ 10,000.00 |
| Robert Wilson, Esq. | $ 10,000.00 |
| Christie Herndon | $ 8,000.00 |

| | | |
|---|---|---|
| Grand Rivers Community Bank | $ 5,000.00 | |
| Jack Hodges, Esq. | $ 5,000.00 | |
| McElroy, Hodges & Caldwell, PC | $ 3,148.00 | |
| A. Nolte, Esq. | $ 3,000.00 | |
| Artomish Law | $ 948.00 | |
| S. Hudson | $ 480.00 | |
| Total | $8,379,779.00 | $8,900,000.00 |
| | | $8,379,779.00 |
| | | $ 520,221.00 Misc. |



Mr. Don Rishell
15100 Milagrosa Dr. Apt. 205
Fort Myers, FL 33908

By Fed Ex

US Bankruptcy Court For The
Southern District Of Illinois
301 West Main St
Benton, Illinois 62812